United States District Court
Southern District of Texas
**ENTERED**
November 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ELIAS ALVAREZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00018 |
| | § | |
| J.W. COX, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Elias Alvarez, proceeding *pro se*, is a federal prisoner currently in a Residential Reentry Center in Corpus Christi, Texas. On January 10, 2023,[1] he filed the present 28 U.S.C. § 2241 petition, alleging that the Bureau of Prisons ("BOP") failed to properly calculate his sentencing credits under the First Step Act ("FSA"). (D.E. 1). Respondent Warden J.W. Cox ("the Government") has filed a motion for summary judgment, to which Alvarez has responded. (D.E. 9, 10, 12). For the reasons discussed further below, it is recommended that the Government's motion for summary judgment (D.E. 9) be **GRANTED** and Alvarez's petition be **DISMISSED** for failure to exhaust.

---

[1] At the time he filed his petition, Alvarez was incarcerated at the Federal Correctional Institution-Three Rivers in Three Rivers, Texas. (D.E. 1 at 1). He moved to the Residential Reentry Center while this case was pending. (D.E. 11).

## I. JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is appropriate in this court because Alvarez is in custody in the Southern District of Texas. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

## II. BACKGROUND

### a. Petition

In his petition, Alvarez alleges that the BOP erroneously calculated his sentencing credits under the FSA. (D.E. 1 at 6, 8-9).[2] Specifically, he contends that the BOP incorrectly disallowed 722 days of FSA programming that resulted in the loss of the related time credits. (*Id.* at 8). Alvarez alleges that he is supposed to receive 15 credit days for every 30 days of FSA programming, but that the BOP has not calculated the appropriate amount of credits. (*Id.* at 6). As a result, Alvarez contends that he has now exceeded his sentence length and seeks to have the credit applied to his sentence and supervised release. (*Id.* at 9, 11-12).

### b. FSA Credit Calculation

William May, a BOP Unit Manager, stated the following in a declaration. (D.E. 9-1 at 2-4). In October 2022, the BOP implemented an automated time credit calculator for FSA credits. (*Id.* at 3). In the same month, Alvarez received his initial FSA Time Credit Assessment, which showed 722 disallowed programming days. (*Id.* at 3, 18). In February

---

[2] Alvarez raises four separate claims. However, the first three claims all relate to the FSA credit calculation, and his fourth claim merely argues that this Court can consider this type of claim. (D.E. 1 at 6-12).

2023, the BOP re-launched the time credit calculator for all inmates, which corrected calculation issues from the first calculation. (*Id.* at 3). Alvarez's February 2023 FSA Time Credit Assessment showed only 53 disallowed programming days. (*Id.* at 3, 28). He earned 365 credit days towards his release, and a further 185 credit days towards placement in a residential re-entry center or home confinement. (*Id.*). From December 21, 2018, through December 10, 2020, Alvarez earned 10 time credits for every 30 days of successful FSA programming participation. (*Id.* at 3, 29). He was first assessed a low recidivism rating on December 10, 2020, and completed a second assessment at low risk on December 5, 2021, and therefore began earning 15 credits for every 30 days. (*Id.* at 3-4, 29).

In a more recent FSA Time Credit Assessment from May 6, 2023, the BOP again adjusted the rate at which Alvarez earned FSA time credits, now indicating that Alvarez was assessed a low recidivism risk beginning in December 2018 and completed a second assessment period at low risk on July 17, 2019. (D.E. 12 at 4). Thus, he began earning 15 FSA time credits for every 30 days of successful programming on July 17, 2019. (*Id.*). Based on this new calculation, Alvarez earned 365 credits days towards his release, and a further 370 credit days towards placement in a residential re-entry center or home confinement. (*Id.* at 3).

    c.   *Administrative Exhaustion*

On August 22, 2022, Alvarez submitted a BP-8 informal resolution form complaining that he had not received any FSA time credits. (D.E. 1-1 at 1). On September

1, 2022, a staff member responded that FSA credits were not applied at the local level, were automated, and were prioritized by projected inmate release date. (*Id.*).

On September 5, 2022, Alvarez submitted a BP-9 request for administrative remedy, again complaining, among other things, that he had not received the FSA credits he was entitled to. (*Id.* at 2). It was logged as received on September 7, 2022. (D.E. 9-1 at 3-4). On September 29, 2022, the BOP informed Alvarez that more time was necessary to respond to his request, and the response deadline was extended to October 17, 2022. (D.E. 1-1 at 5; D.E. 9-1 at 4). On November 10, 2022, the Warden responded to Alvarez's BP-9, explaining the time credits Alvarez received, stating that time credits were applied by the Central Office, and denying the request. (D.E. 1-1 at 8; D.E. 9-1 at 3-4). This response was delivered to Alvarez on November 15, 2022. (D.E. 10 at 18).

On October 23, 2022, Alvarez submitted a BP-10 regional administrative remedy appeal raising the same complaint. (D.E. 1-1 at 7). He noted that he previously filed a BP-9 but had not received a response. Alvarez further noted that he had received an FSA credit calculation, but it was incorrect. (*Id.*). It was logged as received on November 7, 2022. (D.E. 9-1 at 3, 5). On December 14, 2022, the Regional Office rejected Alvarez's appeal, instructing him to resubmit his appeal with a copy of the BP-9 response. (*Id.* at 5). A declaration submitted by a BOP employee indicates that Alvarez was given 15 days to resubmit his appeal. (*Id.* at 3). This response was delivered to Alvarez on January 12, 2023. (D.E. 10 at 23).

4

On December 13, 2022, Alvarez submitted a BP-11 Central Office administrative remedy appeal raising the same complaint. (D.E. 1-1 at 10). He noted that he previously filed a BP-10 but had not received a response. (*Id.*). It was logged as received on December 27, 2022. (D.E. 9-1 at 3, 6). On January 9, 2023, the Central Office rejected Alvarez's appeal, stating that it concurred with the rationale of the Regional Office for rejection. (D.E. 10 at 20; D.E. 9-1 at 6). The Central Office instructed Alvarez to follow the directions provided on the prior rejection notice. (D.E. 10 at 20). This response was delivered to Alvarez on January 19, 2023. (*Id.* at 21).

### III. DISCUSSION

    *a.  Exhaustion*

In its motion for summary judgment, the Government first argues that Alvarez failed to properly exhaust his administrative remedies before filing his petition. (D.E. 9 at 6-7). The Government argues that Alvarez's BP-10 and BP-11 grievances were rejected for failure to follow BOP policy, but Alvarez failed to resubmit either appeal. (*Id.*).

Alvarez responds that he properly exhausted his administrative remedies. (D.E. 10 at 3). He argues that his BP-8 was denied on August 22, 2022, and his BP-9 was submitted on September 5, 2022. Alvarez contends that the warden sought an extension to respond until October 17, 2022, but failed to do so. Alvarez argues that, under BOP policies, when the warden fails to receive a response within the allotted time, the absence of a response can be considered a denial, making his BP-10 properly filed. (*Id.*). Similarly, Alvarez argues that, although his BP-10 was denied within the allotted time, he did not actually

5

receive the response for 79 days, which is why he filed his BP-11 in the interim after the allotted time had expired. (*Id.* at 3-4). Alvarez argues that his grievances were all filed properly under the regulations and BOP policy. (*Id.* at 4).

The authority to compute sentence credits is held by the Attorney General and delegated to the BOP. *United States v. Wilson*, 503 U.S. 329, 335 (1992). A § 2241 petitioner must first exhaust his administrative remedies in the BOP. *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[M]ere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Exceptions to the exhaustion requirement are only appropriate if the administrative remedies are unavailable or wholly inappropriate to the relief sought, or where an attempt to exhaust the remedies would be futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). These exceptions only apply in extraordinary circumstances. The petitioner bears the burden of showing that administrative review would be futile. *Id.*

Under the BOP's administrative remedy program, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Within 20 days after the date on which the basis for the grievance occurred, the inmate must complete the informal resolution process and file a formal written Administrative

6

Remedy Request on form BP-9. *Id.* § 542.14(a). The warden must respond within 20 days, although this deadline may be extended by another 20 days. *Id.* § 542.18.

If an inmate is not satisfied with the warden's response to his BP-9, he may submit an appeal to the Regional Director on form BP-10 within 20 days after the warden signed the response. *Id.* § 542.15(a). The Regional Director must respond within 30 days, although this deadline may be extended by another 30 days. *Id.* § 542.18.

If an inmate is not satisfied with the Regional Director's response to his BP-10, he may submit an appeal to the General Counsel on form BP-11 within 30 days after the Regional Director signed the response. *Id.* § 542.15(a). The General Counsel must respond within 40 days, although this deadline may be extended by another 20 days. *Id.* § 542.18. Both BP-10 and BP-11 appeals must be accompanied by one complete copy of all previous filings and responses. *Id.* § 542.15(b)(1).

If accepted, an inmate request or appeal "is considered filed on the date it is logged into the Administrative Remedy Index as received." 28 C.F.R. § 542.18. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* Any request or appeal may be rejected without response if it does not meet any part of the regulations. 28 C.F.R. § 542.17(a). When a submission is rejected, the inmate must be provided with written notice explaining why. *Id.* § 542.17(b). If the defect is correctable, the notice must provide a reasonable time extension. *Id.* If the inmate is not given an opportunity to correct the defect and resubmit, he may appeal the rejection to the next level. *Id.* § 542.17(c). On

7

appeal, the Coordinator may affirm the rejection, direct that the submission be accepted at the lower level, or accept the submission for filing. *Id.*

Here, Alvarez did not properly exhaust his administrative remedies. Specifically at the final level of the administrative remedy process, Alvarez's BP-11 was received on December 27, 2022. (D.E. 9-1 at 3, 6). For the purposes of calculating the Central Office's deadline to respond, an inmate's appeal is considered filed on the date it is received. 28 C.F.R. § 542.18. The Central Office had 40 days to respond to Alvarez's appeal. *Id.* Accordingly, the deadline to respond was February 6, 2023.[3] The Central Office responded on January 9, 2023, and the response was delivered to Alvarez on January 19, 2023. (D.E. 10 at 20-21; D.E. 9-1 at 6). However, Alvarez filed this § 2241 petition on January 10, 2023, before he had received the Central Office's response and still within the time period for the Central Office to respond. (D.E. 1 at 13). Moreover, the Central Office did not deny Alvarez's appeal on the merits, but rather rejected it and instructed him to re-file his BP-10 to the Regional Office. (D.E. 10 at 20; D.E. 9-1 at 6). Alvarez was given the opportunity to correct the defect and re-submit his appeal, but failed to do so. 28 C.F.R. § 542.17(c). The Fifth Circuit takes a strict approach to the exhaustion requirement, and despite the BOP's apparent failure to closely follow the regulatory response deadlines at other stages of the exhaustion process, Alvarez did not properly exhaust his remedies at the Central Office stage and, instead of re-submitting his appeal to the Regional Office as directed, filed this § 2241.

---

[3] The actual fortieth day, February 5, 2023, was a Sunday.

Although Alvarez failed to properly exhaust his administrative remedies, this memorandum will briefly address the merits in the alternative. As an initial matter, to the extent that Alvarez complains about having 722 days of FSA credits disallowed, that claim is now moot because the BOP has recalculated his credits and only 53 days are now disallowed. (D.E. 9-1 at 3, 28). Further, to the extent that Alvarez disputes the 53 remaining disallowed days, records indicate that Alvarez was being transferred between facilities during these periods, and therefore he was not eligible to receive time credits for those days. (D.E. 9-2 at 28-29); 28 C.F.R. § 523.41(c)(4)(iii). To the extent Alvarez contends that he should have earned 15 days of time credit for every 30 days of completed programming, the most recent FSA Time Credit Assessment in the record shows that he has been earning 15 days of time credit since July 17, 2019, when he became eligible to do so. (D.E. 10 at 4); 18 U.S.C. § 3632(d)(4)(A). Finally, to the extent that Alvarez contends that the allowed credits have not been properly applied, he has received the maximum of 365 days towards early transfer to supervised release, and the remainder has been applied to Alvarez's release to prerelease custody. (D.E. 9-1 at 7, 28; D.E. 10 at 3); 18 U.S.C. §§ 3624(g)(2), (3), 3632(d)(4)(C). Accordingly, even if Alvarez had properly exhausted his administrative remedies, his claims should be denied because his FSA time credits have been calculated and applied correctly.

## IV. RECOMMENDATION

Accordingly, it is respectfully recommended that the Government's motion for summary judgment (D.E. 9) be **GRANTED** and Alvarez's petition (D.E. 1) be **DISMISSED** for failure to exhaust.

Respectfully submitted on November 3, 2023.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).